UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MICHAEL WALKER,

                Plaintiff,

           - against -

CITY OF NEW YORK; BROOKLYN
PUBLIC DEFENDERS OFFICE; DANIELLE
REGIS; NEW YORK CITY POLICE
DEPARTMENT; Detective COURTNEY
WINSTON; Detective RAYMOND HIGGINS;
Detective JASON GUZMAN; Detective
PATRICK JEAN PIERRE; Ranking Detective
DANIEL PIERRINO; CIVIL COMPLAINT
REVIEW BOARD; Chairman FRANK
DAVIE; Field Investigator A. WASSIM; Panel
Member S. CARCETERRA; Panel Member M.
RIVADENE; Records Access Officer
GEORGE ALEXANDER; INTERNAL
AFFAIRS BUREAU; Captain BRIAN WHITE;
Lt. DWAYNE WATSON; Sgt. MOODE;
Detective CARMELO RIVERA; Detective
RASHAD VANDROSS; CORPORATION
COUNSEL LAW DEPT.; Supervisor NELSON
GENEVIEVE; DANIEL OLINER; ALLYSON
NICOLE BROWN; CHRISTOPHER D.
DELUCA,

                Defendants.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-5240 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

       Plaintiff Michael Walker, incarcerated at the Eastern New York Correctional Facility,

brings this *pro se* action under 42 U.S.C. §§ 1983, 1985, and 1986, the Americans with Disabilities

Act ("ADA") and Rehabilitation Act, and various state-law provisions. Plaintiff's request to

proceed *in forma pauperis* ("IFP") is granted pursuant to 28 U.S.C. § 1915. For the reasons

discussed below, Plaintiff's Amended Complaint (Dkt. 24-1) is dismissed in its entirety. Plaintiff

is granted sixty (60) days' leave to file a Second Amended Complaint as set forth below.

## I.     Underlying Facts[1]

This case is related to Plaintiff's pending action in *Walker v. Raja*, No. 17-CV-5202 (PKC) (LB) (E.D.N.Y. Aug. 22, 2017).[2]   On January 8, 2017, Plaintiff was arrested following an attempted armed robbery of a jewelry store.  *Walker v. Raja*, No. 17-CV-5202 (PKC) (LB), 2020 WL 606788, at *1 (E.D.N.Y. Feb. 7, 2020).  After an altercation during which Plaintiff threatened the store owner and an employee with a gun, Plaintiff fled the store with the jewelry and firearm. *Id.*  The store owner followed Plaintiff and wrestled him to the ground, where the pair exchanged blows until civilian bystanders intervened, grabbing Plaintiff and restraining him on the pavement. *Id.*

Soon thereafter, several police officers from the New York City Police Department ("NYPD") arrived at the scene.  *Id.*  In their attempts to subdue and arrest Plaintiff, an officer struck Plaintiff several times, and a female officer "began repeatedly punching him in the face." *Id.*  Plaintiff was charged with, *inter alia*, robbery, assault, grand larceny, criminal possession of a weapon, and criminal possession of stolen property.  *Id.* at *2.  He pled guilty to attempted robbery in the second degree pursuant to New York Penal Law § 160.10(2)(a), and was sentenced to 12 years to life as a "persistent violent felony offender."  *Id.*

Plaintiff had advanced glaucoma and distorted vision prior to the January 8, 2017 arrest, but his vision became completely impaired following the arrest.  *Id.*  Plaintiff is now legally blind,

---

[1] This recitation of the facts is based on the non-conclusory allegations in the Complaint and Amended Complaint, which the Court accepts as true at this stage in the case, *see Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (per curiam) (citation omitted), as well as the Court's factual findings at the summary judgment stage in *Walker v. Raja*, *see* 2020 WL 606788.

[2] In that lawsuit, Plaintiff has asserted § 1983 and state-law claims against NYPD officers based on the same attempted robbery incident that forms the basis of this action.

and "cannot see, write, type, nor navigate himself without the assistance of" auxiliary aids. (Amended Complaint ("Am. Compl."), Dkt. 24-1, at 10.)  Plaintiff also suffers from post-traumatic stress disorder following the arrest and, upon admission to the New York Department of Corrections and Community Supervision ("DOCCS") local county jail, was hospitalized in the medical unit due to medical complications.  (*Id.* at 14–15.)

Attorney Danielle Regis from the Brooklyn Defender Services[3] ("BDS") was assigned to represent Plaintiff in his criminal proceeding.  (*Id.* at 15.)  Around April 2017, Regis visited Plaintiff in DOCCS confinement, accompanied by a social worker.  (*Id.*)  During the visit, Regis played back the surveillance tape from Plaintiff's arrest, verbally describing the video to Plaintiff due to his visual impairment.  (*Id.* at 16.)  In the video, the arresting officers were subduing Plaintiff and striking him "until incoherent," including NYPD Officer Elisa Battista, who was "seen repeatedly striking [P]laintiff's head[.]"  (*Id.* at 16.)  Regis "immediately shut[] off [the] video" in the middle of playback, which Plaintiff characterizes as "a conscious disregard in preventing [P]laintiff any further information due to overwhelming exculpatory impeaching evidence, enough for criminal charges being brought on [the] seven arresting officers."  (*Id.*)  Plaintiff thereafter requested access to the surveillance tape several times to "[n]o avail," which he claims is due to Regis's "derelict tactics to insulate [the] seven arresting officers."  (*Id.*)

---

[3] Though Plaintiff refers to the "Brooklyn Public Defender Office" in his Complaint (*see, e.g.*, Complaint ("Compl."), Dkt. 1, at 10), the Court assumes Plaintiff meant to name Brooklyn Defender Services, a non-profit public defender organization, *see* http://bds.org/ (last visited Mar. 3, 2021), and refers to the organization by its correct name.

On or about May 12, 2017, Plaintiff filed a Notice of Claim with the New York State Office of the Comptroller concerning state-law claims arising from his January 2017 arrest.[4] (*See id.* at 17); *see also Walker*, 2020 WL 606788, at *2. Plaintiff also filed a "[p]etition with the (DOJ) Dept[.] of Justice (Southern District)" on May 6, 2017, a citizen's complaint with the Civilian Complaint Review Board ("CCRB")[5] on May 18, 2017, and a citizen's complaint with the NYPD's Internal Affairs Bureau ("IAB")[6] on June 6, 2017. (*See* Am. Compl., Dkt. 24-1, at 17.) On August 22, 2017, Plaintiff filed a *pro se* action against NYPD Officers Taimur Raja, David Vazquez, Estharlin Lopez, and Kyle Brown, advancing claims under 42 U.S.C. § 1983 and state law in connection with his January 2017 apprehension and arrest. *See* Complaint, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Aug. 22, 2017), ECF No. 2; *see also Walker*, 2020 WL 606788, at *2.

## II.    *Walker v. Raja*

The New York City Office of Corporation Counsel ("Corporation Counsel") represents the arresting officers in *Walker v. Raja*, which is still pending before this Court. Previously, Allyson Brown, an attorney with Corporation Counsel, requested a stay of the proceedings in light of the pending CCRB investigation. (Am. Compl., Dkt. 24-1, at 18); *see also* Motion to Stay, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Nov. 2, 2017), ECF No. 19; 11/6/2017 Order, *Walker v. Raja*,

---

[4] The Comptroller's Office informed Plaintiff on or about May 24, 2017 that his claim was denied as untimely because it had not been filed within 90 days from the date of his January 8, 2017 arrest. *Walker*, 2020 WL 606788, at *2.

[5] The CCRB is an independent City agency "empowered to receive, investigate, mediate, hear, make findings, and recommend action on complaints against New York City police officers." *Joseph v. Doe*, No. 16-CV-2004 (PKC) (LB), 2017 WL 4233024, at *2 n.3 (E.D.N.Y. Sept. 22, 2017).

[6] The IAB is a division of the NYPD that "investigates claims of serious misconduct and corruption of members of the NYPD." *Floyd v. City of New York*, 739 F. Supp. 2d. 376, 379 (S.D.N.Y. 2010); *see id.* at 384 ("IAB investigations are confidential, including within the NYPD.").

No. 17-CV-5202 (E.D.N.Y. Nov. 6, 2017), ECF No. 21. On June 12, 2018, following an 18-month investigation and hearing in front of a three-member panel,[7] the CCRB "exonerated [the] five arresting officers[,]" Raja, Brown, Vazquez, Lopez, and Sgt. Rahman. (Am. Compl., Dkt. 24-1, at 18.) The stay in *Walker v. Raja* was lifted, and the case proceeded to discovery. (*Id.* at 18); *see also* 8/7/2018 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Aug. 7, 2018), ECF No. 51.

During discovery, Plaintiff received the CCRB investigative records and learned that there were seven NYPD officers involved in his arrest, not five, as he had previously thought. (Am. Compl., Dkt. 24-1, at 19.) According to Plaintiff, when questioned by the Court as to whether there were other arresting officers that should have been added to the complaint, Corporation Counsel attorney Brown "strategically respon[ded][] by mentioning only[] (Sgt. Rahman) with a conscious disregard [in] excluding arresting officers . . . [William Chow and Elisa Battista] . . . when having constructive knowledge of direct participation [by] all seven arresting officers." (*Id.* at 19.) Plaintiff claimed that Brown failed to mention Officers Chow and Battista in order to cover up the CCRB's "mishandling [of] investigations in disavowing information while deleting arresting officers police misconduct . . . which result[ed] in [the] same two arresting officers [being] intentionally excluded from the" CCRB decision. (*Id.* at 19–20.) Plaintiff also alleged that BDS attorney Regis had seen Officers Chow and Battista on the surveillance tape during her visit with Plaintiff in April 2017, but hid their involvement from Plaintiff. (*Id.* at 20.) Plaintiff further claimed that he later learned through discovery that "the video surveillance tape, audio and investigative records sent by [the City], [BDS], Brooklyn District Attorney['s] Office and Corporation Counsel law dept [had been] doctor[ed], deleting [the] arresting officers['] police

---

[7] The panel consisted of CCRB chairman Frank Davie and CCRB members S. Carceterra and M. Rivadene. (Am. Compl., Dkt. 24-1, at 18.)

misconduct[.]" (*Id.*) Plaintiff believed that the "records, videos, and audio[]" provided to Plaintiff and the Court were "doctored when sent during discovery." (*Id.* at 21–22 (asserting that Defendants were "banking on [P]laintiff's disability" and "hinder[ing] him from exercising his Civil Rights").) According to Plaintiff, the original video surveillance tape showed Officer Battista "kneeling over [P]laintiff in a malicious assault," and an audio file depicted Officer Vazquez stating that "he [had] used physical force on [P]laintiff," but both files had been deleted, "along with missing investigative records concerning direct participation[.]" (*Id.* at 20.)

On November 6, 2018, the Court granted Plaintiff leave to file an amended complaint. (Dkt. 62.) The Amended Complaint additionally named as defendants NYPD Officers William Chow and Elisa Battista, Sergeant Sazedur Rahman, and the City of New York (the "City").[8] Amended Complaint, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Oct. 31, 2018), ECF No. 61; 11/6/2018 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Nov. 6, 2018), ECF No. 62. On February 7, 2019, Plaintiff filed a motion to compel, in which he raised the issue of the allegedly altered videos, asserting that the "CCRB and Corporation Counsel have in their po[ss]ession video record evidence of . . . facts of police criminal misconduct." Motion to Compel, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Feb. 7, 2019), ECF No. 86, at 1. In response, Corporation Counsel explained that:

---

[8] In his Amended Complaint in *Walker v. Raja*, Plaintiff set forth his theories about the video alterations and omission of Officers Chow's and Battista's identities from the defendants' initial disclosures. *See, e.g.*, Amended Complaint, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Oct. 31, 2018), ECF No. 61, at 3 ("Plaintiff states that police officer Battista [] somehow was not mentioned within [the initial disclosures] but was present during [P]laintiff['s] assault and arrest. . . . In addition[,] in and around April of 2017[,] [P]laintiff, defense attorney, and [a] social worker viewed a record of a female officer [ ] assaulting [P]laintiff[.] [T]his video record is missing as evidence and has yet to surface[]. . . . Battista[] somehow disappear[ed] from [the] CCRB investigation completely[.]"), 12 ("Police officer Battista was not included but is an Arresting officer present at the scene.").

Defendants produced copies of these videos to Plaintiff in their original form as received by [Corporation Counsel], and were not altered in any way by this Office. Additionally, Defendants attach hereto as Exhibit B a video of the underlying incident received from the Kings County District Attorney's Office, which is an incomplete version of the video from Brooklyn Defender Services that was previously provided to Plaintiff during discovery and to the Court on December 22, 2017.

Response to Motion to Compel, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Feb. 22, 2019), ECF No. 91, at 1–2.[9] In its partial grant of summary judgment, the Court briefly addressed this argument and found it "not cognizable," given that "Plaintiff offer[ed] no record evidence to suggest that the video evidence [had been] doctored." *Walker*, 2020 WL 606788, at *3 n.6.

Plaintiff also moved for sanctions against the CCRB and Corporation Counsel,[10] *see* Motion for Sanctions, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Mar. 4, 2019), ECF No. 93, which the Honorable Lois Bloom denied on the grounds that there was "no record evidence that

---

[9] Plaintiff alleges that, in response to his raising of the issue of doctored videos in *Walker v. Raja*, Corporation Counsel stated that it was the Kings County District Attorney's Office that had deleted portions of the video surveillance tape, not Corporation Counsel. (Compl., Dkt. 1, at 15 (referring to the "Brooklyn" District Attorney's Office, which is the Kings County District Attorney's Office).) Although Corporation Counsel's above statement from its response to the motion to compel, *Walker v. Raja*, No. 17-CV-5202, Dkt. 91, at 1–2, does indicate that the copy of the video sent by the District Attorney's Office to Corporation Counsel was "incomplete" when compared to the BDS version provided to Plaintiff and the Court, that does not mean that the District Attorney's Office "doctored" the video; rather, it means only that the Office did not provide the entire video to Corporation Counsel. "Incomplete" is not the same as "doctored" or equivalent to altering images. Indeed, contrary to Plaintiff's contention, he received the entire video from BDS in discovery, and there is no basis for Plaintiff's claim that any party "doctored" video evidence in *Walker v. Raja*.

[10] In a submission filed April 1, 2019, Plaintiff asserted that, though Defendants "produced 3 doctored video segments" during discovery, "the building where the incident occurred had an adjoining store," which "had at least one other camera that would have recorded a more concise detailed description concerning relevant footage of [Officer] Vazquez strategically taking a firearm from a civilian then carefully planting [the] firearm near plaintiff['s] feet as he is beaten by other defendants." Plaintiff's Supportig Evidence, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Apr. 1, 2019), ECF No. 94, at 5. Plaintiff claimed that he "attempted to obtain this footage on multiple occasions[,] but was unsuccessful due to preventive tactics by counsel for the defendants." (*Id.*)

[D]efendants [had] disobeyed a discovery order or engaged in sanctionable conduct. Defendants have provided the videos to plaintiff as they were received by their office," 4/2/2019 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Apr. 2, 2019), ECF No. 95.

The parties cross-moved for summary judgment, and by Memorandum and Order on February 7, 2020, the Court denied Plaintiff's motion and partially granted and denied Defendants' motion, dismissing some of Plaintiff's claims. *Walker*, 2020 WL 606788, at *13. That case is pending trial as to the few remaining claims, *i.e.*, claims for excessive force and failure to intervene as to Defendants Raja, Vazquez, Brown, Chow, and Battista, and failure to supervise as to Defendant Rahman.[11] *See id.* In anticipation of trial, the Court, *inter alia*, granted the defendants' motion in limine to preclude Plaintiff "from proffering any evidence to suggest that any material was doctored in this matter." Court's Motions *in Limine* Chart, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Aug. 11, 2020) ECF No. 144, at 2, #9.

Plaintiff filed the instant action thereafter.

## III. The Instant Action

On October 29, 2020, Plaintiff commenced the instant action against the City, BDS, the CCRB, the IAB, and Corporation Counsel based on the alleged misconduct relating to investigations into his January 2017 arrest and the discovery process in *Walker v. Raja*. (Compl., Dkt. 1.) On January 21, 2021, Plaintiff filed a submission entitled "Amended Complaint," consisting of three pages summarizing the exhibits he seeks to incorporate in his Complaint. (Dkt. 21.) On February 9, 2021, Plaintiff filed the Amended Complaint, adding as defendants the NYPD

---

[11] On April 12, 2021, the Court referred the case to the Trial Ready Rapid Mediation Program, and requested the ADR Department to secure pro bono counsel for Plaintiff. *See* 4/12/2021 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Apr. 12, 2021).

and individual employees of the NYPD, CCRB, and Corporation Counsel in their individual and official capacities.[12] (*See generally* Am. Compl., Dkt. 24-1.)

For the reasons discussed below, the Court dismisses the Amended Complaint in its entirety, and grants Plaintiff leave to file a Second Amended Complaint within sixty (60) days.

## LEGAL STANDARD

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A document filed *pro se* is to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "If [a] liberal reading of the complaint gives any indication that a valid claim might be stated, the Court must give the plaintiff an opportunity to amend the complaint." *Nelson-Charles v. U.S. Dep't of Educ.*, No. 19-CV-1616 (PKC) (PK), 2019 WL 1675999, at *2 (E.D.N.Y. Apr. 16, 2019) (internal quotation marks omitted) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Title 28 of the United States Code § 1915A requires this Court to review the complaint in a civil action in which a prisoner seeks redress from a governmental entity or from officers or

---

[12] Specifically, Plaintiff seeks to bring claims against Detective Courtney Winston, Detective Raymond Higgins, Detective Jason Guzman, Detective Patrick Jean Pierre, and Ranking Detective Daniel Perrino of the NYPD's 70th Precinct; Chairman Frank Davie and employees A. Wassim, S. Carceterra, M. Rivardene, and Records Access Officer Alexander George of the CCRB; Captain Brian White, Lieutenant Dwayne Watson, Sergeant Moode, Detective Carmelo Rivera, and Detective Rashad Vandross of the NYPD's IAB and 67th precinct; and Corporation Counsel attorneys Nelson Genevieve, Daniel H. Oliner, Allyson Nicole Brown, and Christopher D. Deluca.

employees thereof, and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Similarly, pursuant to the IFP statute, a district court must dismiss a case if the court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

Although Plaintiff's Amended Complaint is slightly confusing in that he frequently references legal phrases without substantively elaborating on his allegations, he appears to center his claims on five main theories: (1) the CCRB and IAB failed to properly investigate his claims against his arresting officers, and the City, CCRB, IAB, Corporation Counsel, and BDS subsequently conspired to cover up the mishandled investigation by doctoring video evidence and failing to disclose the identities of Officers Chow and Battista in *Walker v. Raja*; (2) NYPD officers pressured witnesses and covered up evidence in the lead-up to Plaintiff's grand jury indictment; (3) the City's failure to train led to the foregoing violations; (4) the City and BDS failed to accommodate Plaintiff's visual impairment during his underlying criminal proceedings; and (5) the City failed to establish an independent commission to investigate Plaintiff's claims against his arresting officers. Based on these factual allegations, Plaintiff asserts claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against the City, the NYPD, individual NYPD officers, BDS, BDS attorney Regis, the CCRB, CCRB employees, the IAB, IAB employees, Corporation Counsel, and Corporation Counsel attorneys; claims pursuant to Title II of the ADA and the Rehabilitation Act

against the City, BDS, and BDS attorney Regis; and state-law claims against the City. (Am. Compl., Dkt. 24-1, at 23–43.)[13]

## I. Section 1983

42 U.S.C. § 1983 ("Section 1983") "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 438 (E.D.N.Y. 2012) (quoting *Baker v. McCollan*, 443 U.S 137, 144 n.3 (1979)); *accord Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). In order to maintain a civil rights action under Section 1983, a plaintiff must allege two essential elements. First, the conduct challenged must have been "committed by a person acting under color of state law[.]" *Cornejo*, 592 F.3d at 127 (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (internal quotation marks and citation omitted)). Second, the conduct complained of "must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo*, 592 F.3d at 127; *see also Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

### A. Claims Against the NYPD, IAB, CCRB, and Corporation Counsel

As an initial matter, claims against agencies of the City of New York, including the NYPD, IAB, the CCRB, and Corporation Counsel, are not allowed, and instead, must be brought against

---

[13] Though not distinguishing between claims under Section 1983 and state law, Plaintiff explains that he "asserts the following thirteen Counts of which all are amongst defendants": (1) deliberate indifference, (2) negligence, (3) conspiracy, (4) failure to intervene, (5) fraudulent misrepresentation or deception, (6) abuse of process, (7) intentional infliction of emotional distress, (8) equitable estoppel, (9) due process, (10) equal protection, (11) procedural due process, (12) fabrication of evidence and failure to investigate, and (13) substantive due process. (Dkt. 26, at 4.)

the City of New York.  *See* N.Y.C. Charter, ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Ojeda v. Mendez*, No. 20-CV-3910 (EK) (LB), 2021 WL 66265, at *3 (E.D.N.Y. Jan. 7, 2021) (dismissing claims against, *inter alia*, the NYPD and IAB as non-suable entities (citing N.Y.C. Charter, ch. 17, § 396)); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City." (citation omitted)); *Wingate v. City of New York*, No. 14-CV-4063 (ARR) (LB), 2018 WL 3863439, at *10 (E.D.N.Y. Aug. 14, 2018) ("Plaintiff's claims against Corporation Counsel . . . are dismissed because [it is] not [a] suable entit[y]." (citing, *inter alia*, N.Y.C. Charter ch. 17, § 396)).

Therefore, Plaintiff's claims against the NYPD, the IAB, the CCRB, and Corporation Counsel are dismissed for failure to state a claim.

### B.    Claims against BDS and BDS Attorney Regis

Plaintiff's Section 1983 claims against BDS and BDS attorney Regis also must be dismissed.  Though BDS and Regis were appointed by the state court as Plaintiff's counsel in his underlying criminal case, as a general matter, Plaintiff cannot sue his public defender under Section 1983.  *See Polk County. v. Dodson*, 454 U.S. 312, 324–25 (1981) (holding that public defenders do not act under color of law when they represent defendants and are not subject to suit under Section 1983); *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997) ("[C]ourt-appointed attorneys performing a lawyer's traditional functions as counsel to defendant[s] do not act 'under color of state law' and  therefore are not subject to suit under 42 U.S.C. § 1983." (internal citation omitted)).

> Absent special circumstances suggesting concerted action between an attorney and a state representative, the representation of a defendant by private counsel in state criminal proceedings does not constitute the degree of state involvement or

interference necessary to establish a claim under § 1983, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender.

*Liverpool v. City of New York*, No. 19-CV-5527 (CM), 2019 WL 3745734, at *2 (S.D.N.Y. Aug. 7, 2019) (citing, *inter alia*, *Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005)); *see also id.* at *3 (noting that the plaintiff "has not stated a § 1983 claim against" a BDS attorney, who is a "private part[y] who do[es] not work for any state or other government body"). Although Plaintiff claims that BDS attorney Regis prevented Plaintiff from seeing and accessing certain surveillance tape evidence in an effort to "insulate [the] seven arresting officers" (Am. Compl., Dkt. 24-1, at 16), these claims neither sufficiently allege "concerted action" between Regis and "state representatives," nor are they supported by any factual allegation in the Complaint or Amended Complaint. Given the wholly conclusory nature of Plaintiff's assertion that Defendant Regis sought to protect the arresting officers, the Court cannot find any "special circumstance" that justifies deviating from the fundamental principle that Plaintiff's court-appointed defense counsel cannot be sued as state actors under Section 1983.

Therefore, Plaintiff's Section 1983 claims against BDS and Regis are dismissed for failure to state a claim.

### C.    Claims Against NYPD Officers

When asserting claims under Section 1983 against government officials, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). In connection with his claims against NYPD 70th Precinct Detectives Winston, Higgins, Guzman, Jean Pierre, and Perrino, Plaintiff alleges that the detectives,

> acting under the color of state law, also as arms to the (NYPD), in concert with the [BDS], in a Sin Qua Non to insulate seven arresting officers police misconduct by suppressing exculpatory impeaching evidence, falsifying arrest reports, and allowing inadmissible tainted / manufactured evidence during plaintiff's grand jury

proceedings. [The detectives] amplified their conduct by excluding two crucial arresting officers, (William Chow) [], (Elisa Battista) police misconduct, obstructed the due course of justice. [The detectives] dissuaded arresting officers from telling the truth during secretive meeting of the minds, while forwarding false reports to the grand jury resulting in perjury of witnesses to deprive, oppress, annoy, wantonly motivated to do plaintiff harm in order to insulate seven arresting officers['] police misconduct in order to obtain a collateral objective that's outside legitimate ends of process.

(Am. Compl., Dkt. 24-1, at 27–28.)[14]    As to supervisory officers Captain White, Lieutenant Watson, and Sergeant Moode, Plaintiff alleges simply that they "failed t[o] intervene to prevent such violations [by the IAB] from occurring[,] resulting in injuries of fraudulent concealment [and] [subjecting] [P]laintiff [to] discovery harm that was suffered in deception to delay in bring[ing] [] suit by keeping investigation reports from [P]laintiff." (*Id.* at 39.)

To the extent Plaintiff argues that his arrest and criminal charges were premised on the presentation of "manufactured evidence" during grand jury proceedings, the Court already dismissed such a claim in *Walker v. Raja*, finding that "the evidence overwhelmingly supports a finding that Plaintiff robbed the store with a firearm," and thus Plaintiff cannot establish that "fabricated evidence le[d] to a false charge against him." *See* 2020 WL 606788, at *10. Furthermore, to the extent this claim calls into question the validity of Plaintiff's conviction, it is barred by the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), which holds that a state prisoner's Section 1983 action is barred if success in that action would necessarily demonstrate the invalidity of a criminal conviction or sentence. *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the

---

[14] In an affirmation attached to his Amended Complaint, Plaintiff asserts further allegations against Detectives Winston, Higgins, Guzman, Jean Pierre, and Perrino, but these allegations are similarly vague and fail to allege the detectives' personal involvement. (*See* Dkt. 24-2, at 3–7.)

prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis removed)). Lastly, Plaintiff's general, conclusory statements fail to allege the individual officers' personal conduct that led to the deprivation of Plaintiff's constitutional rights. In fact, Plaintiff fails to state *any* factual allegations as to Detectives Rivera and Vandross of the 67th precinct, despite naming them as Defendants in the Amended Complaint.

Plaintiff's claims against the individual NYPD officers of the 70th Precinct are thus dismissed, with leave to replead facts relating to their individual conduct, provided that any repleaded allegations do not relate to the due-process claim the Court has already dismissed in *Walker v. Raja*. *See* 2020 WL 606788, at *10.

### D. Claims against CCRB Employees

To the extent Plaintiff brings claims against CCRB employees—Chairman Frank Davie, employees A. Wassim and George Alexander, and panel members M. Rivardene and S. Carceterra—for their involvement in the allegedly defective investigation into Plaintiff's arresting officers, the claims are dismissed for lack of personal involvement and for failure to state a claim. First, with respect to Defendants Davie, Alexander, Rivardene, and Carceterra, Plaintiff alleges only that they participated in the CCRB's decision absolving the arresting officers of responsibility, which, in itself, does not constitute a violation of Plaintiff's rights. As to CCRB investigator A. Wassim, Plaintiff alleges:

> (CCRB) field investigator, (A. Wassim) interrogated plaintiff's Brooklyn Public Defender, (Danielle Regis) and with a conscious disregard withheld records of interrogations, an overt act in concealing meetings of the minds that exhibited deliberate indifference by turning their heads to the obvious by disavowing, exculpatory, probative, impeaching evidence in interference with state and federal Court proceedings, unlawful actions motivated by an intent to deprive plaintiff Equal protection of the laws. Defendants refrained and dissuaded arresting officers from giving the truth, concerning accurate statements involving the plaintiff incident on, (Jan 8. 2017) resulting in false oral and written statements preventing

> an honest investigation when false and defamatory statements of facts in their final determination caused a deprivation of plaintiff's civil rights, pursuant to, 42 USC § 1985, while inconsistent with the, IAB investigation holding a different set of arresting officers in their investigation, violation of plaintiff's Due process. Private actors acted in concert with the IAB and Corporation Counsel to inflict an unconstitutional Injury, causing damages[.]

(Am. Compl., Dkt. 24-1, at 33.) Beyond the conclusory statements couched in legal terminology, Plaintiff has failed to explain exactly what "truth" Defendant Wassim dissuaded the officers from telling, and what "false and defamatory statements" were induced. Without more, the claim against Defendant Wassim cannot proceed.

Furthermore, Plaintiff fails to allege the violation of any constitutional right in connection with the CCRB investigation and final decision. "It is well[-]established that there is no constitutional right to an investigation by government officials." *Troy v. City of New York*, No. 13-CV-5082 (AJN), 2014 WL 4804479, at *6 (S.D.N.Y. Sept. 25, 2014) (internal quotations, alterations, and citations omitted); *see also Koulkina v. City of New York*, 559 F. Supp. 2d 300, 316 (S.D.N.Y. 2008) ("[T]here is no federal constitutional right to a[] [CCRB] investigation." (citing *Blount v. Swiderski*, No. 03-CV-0023 (ENV), 2006 WL 3314635 at *12 (E.D.N.Y. Nov. 14, 2006)); *McCaffrey v. City of New York*, 2013 WL 494025, at *5 (S.D.N.Y. Feb. 7, 2013) ("[A] 'failure to investigate' is not independently cognizable as a stand-alone claim[.]"). Plaintiff thus lacks an actionable claim against the CCRB, the IAB, and their employees for allegedly failing to investigate his claims against the arresting officers.

Therefore, Plaintiff's claims against CCRB Chairman Davie, employees A. Wassim and George Alexander, and panel members M. Rivardene and S. Carceterra are dismissed.

### E.     *Monell* Claims Against the City

Plaintiff alleges that the City failed to protect his constitutional rights by, *inter alia*, "fail[ing] to train and supervise" its employees, "creating and contin[uing] in policies or customs

upon having a conscious disregard in private and government municipalities in protecting

plaintiff's (Const Rights)," and failing to

> set[] in place a Commission (Watchdog agency) in preventing private and government entity's in mishandling, and disavowing information involving seven arresting officers police misconduct, revealed upon their investigative work (Collectively) by subpoenaing records resulting in overt acts by withholding, Aided cards, doctor[ing] investigative records, video surveillance tapes, TRI audio radio runs, and disciplinary records[.]

(Am. Compl., Dkt. 24-1, at 23–25.)

Plaintiff's claims against the City of the New York cannot proceed. A municipality can be

liable under Section 1983 if the plaintiff can show that a municipal policy or custom caused the

deprivation of his constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91

(1978). Four types of practices may give rise to a Section 1983 claim against a municipality:

> (1) a formally adopted municipal policy; (2) the actions or decisions of a municipal official with final policymaking authority; (3) a practice so persistent and widespread that it constitutes a custom or usage; and (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference.

*Doe v. City of New York*, No. 18-CV-670 (ARR) (JO), 2018 WL 3824133, at *8 (E.D.N.Y. Aug.

9, 2018) (internal quotation marks and citation omitted); *Safran v. Singas*, No. 20-CV-4537 (PKC)

(SMG), 2020 WL 7125232, at *4 (E.D.N.Y. Dec. 4, 2020) (citation omitted). Critically, "a

prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state

actor." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). As the Second

Circuit has noted, "*Monell* does not provide a separate cause of action for the failure by the

government to train its employees; it *extends* liability to a municipal organization where that

organization's failure to train, or the policies or customs that it has sanctioned, led to an

independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006);

*see also id.* (noting that once a "district court properly [finds] no underlying constitutional

violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct").

1.  Underlying Constitutional Violation

Plaintiff purports to bring claims under the Sixth, Fifth, and Fourteenth Amendments, but fails to allege constitutional violations by any state actor.

Plaintiff fails to state a Six Amendment claim.

> To prevail on a claim for denial of the constitutional right to a fair trial, a plaintiff must demonstrate that "(1) an investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."

*Case v. City of New York*, 408 F. Supp. 3d 313, 322–23 (S.D.N.Y. 2019) (quoting *Caravalho v. City of New York*, 732 F. App'x 18, 24 (2d Cir. 2018) (summary order)). The fabricated information must be "both false and likely to influence a jury's decision." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 280 (2d Cir. 2016). Plaintiff has failed to sufficiently allege any element of a Sixth Amendment violation. As discussed, he offers only conclusory assertions that evidence was "manufactured" by NYPD officers and others without providing any factual allegations to support these claims, such as what evidence was allegedly fabricated and forwarded to prosecutors, by whom, and when, and how that evidence might have affected a jury's verdict. Furthermore, to the extent Plaintiff alleges that NYPD officers mishandled investigations leading up to his criminal charges, "in the context of § 1983, allegations of officers' failure to investigate are considered under the rubric of false imprisonment, false arrest, or malicious prosecution." *Campbell v. Giuliani*, No. 99-CV-2603 (JG), 2000 WL 194815, at *3 n.6 (E.D.N.Y. Feb. 16, 2000) (citing *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 135 (E.D.N.Y. 1998)); *see also Luck v. Westchester Med. Ctr.*, No. 17-CV-9110 (NSR), 2020 WL 564635, at *7 (S.D.N.Y. Feb. 4, 2020) (collecting cases). For the same reasons set forth in *Walker v. Raja*, Plaintiff fails here too to state

a claim for false imprisonment, false arrest, or malicious prosecution. Thus, Plaintiff's Sixth Amendment claims are dismissed.

As to any Fifth Amendment claims Plaintiff seeks to bring, the "Fifth Amendment only applies to claims against the federal government," and not the Defendants in this case. *See Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 412 n.1 (S.D.N.Y. 2013). Any Fifth Amendment claims are thus dismissed.

Plaintiff's claims of Fourteenth Amendment violations pursuant to Section 1983 are also dismissed for failure to state a claim. First, to the extent Plaintiff alleges an equal-protection violation, he has failed to make the requisite factual allegations. "To prove a violation of the Equal Protection Clause . . . [,] a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination . . . [and] that the disparity in treatment cannot survive the appropriate level of scrutiny[.]" *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citations omitted). Plaintiff has not alleged facts from which to infer that Defendants acted with any racial or otherwise impermissible animus, or that Plaintiff was treated differently from any similarly situated persons.

Furthermore, as discussed above, to the extent Plaintiff argues that his procedural due process rights were violated by the mishandling of investigations into his claims against the officers by the CCRB, the IAB, and their employees, these allegations do not give rise to a constitutional violation. *See supra* Section I.D.

Nor does the alleged withholding of evidence and alteration of video surveillance footage in *Walker v. Raja* amount to a constitutional violation. Though Plaintiff alleges that Defendants withheld evidence regarding Officers Chow's and Battista's involvement in the January 2017 altercation, Plaintiff faced no barriers in adding Officers Chow and Battista as Defendants in his

amended complaint in *Walker v. Raja*. In fact, the excessive force claims in that case against the NYPD Officers, including Officers Chow and Battista, are currently pending trial. Though Plaintiff was not able to name Officers Chow and Battista as defendants as early as he otherwise may have liked, this delay does not violate Plaintiff's constitutional rights. *Cf. Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) ("Mere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." (internal quotations and citation omitted)); *see also Smith v. Annucci*, No. 18-CV-1107 (DNH) (DJS), 2019 WL 11727264, at *4–5 (N.D.N.Y. Jan. 16, 2019) ("A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts. Instead, a plaintiff must demonstrate actual injury by establishing that the denial hindered his efforts to pursue a non-frivolous legal claim." (internal quotations and citations omitted)).

Finally, to the extent Plaintiff wishes to hold the Defendant NYPD Officers and/or Corporation Counsel accountable for "derelict tactics" during discovery, the correct mechanism through which to do so is moving for sanctions in that case, which Plaintiff has already, albeit unsuccessfully, done. *See* Motion for Sanctions, *Walker v. Raja*, No. 17-CV-5202 (PKC) (LB) (E.D.N.Y. Mar. 4, 2019), ECF No. 93; 4/2/2019 Order, *Walker v. Raja*, No. 17-CV-5202 (PKC) (LB) (E.D.N.Y. Apr. 2, 2019), ECF No. 95. And as discussed above, the issue of the allegedly doctored video evidence was addressed and rejected by the Court in *Walker v. Raja*. *See, e.g.*, *Walker*, 2020 WL 606788, at *3 n.6; Transcript of 8/11/2020 Pretrial Conference, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Aug. 11, 2020), at 25:15–24 (the Court stating: "The bottom line is I have not seen any evidence, Mr. Walker, about the tapes to show that this tape has been doctored. I have viewed the video surveillance a number of times and it certainly depicts the event that you are complaining about in which you say that the officers use excessive force. And obviously, I

relied in part o[n] my viewing of that video surveillance to allow your excessive force claim to go through. So at this point, again I will just reiterate, that I do not see any basis for your claim that the video surveillance footage was doctored.").

In sum, Plaintiff has failed to sufficiently allege a constitutional violation by any state actor, which, in itself, requires dismissal of his *Monell* claims against the City.

2.      Custom or Policy

Even if this were not the case, the allegations in Plaintiff's Amended Complaint do not give rise to a *Monell* claim against the City. Plaintiff proffers two theories of liability against the City under *Monell*: that the City (1) failed to train and supervise its employees, exhibited deliberate indifference to Plaintiff's rights, and created a policy or custom that resulted in the deprivation of Plaintiff's rights (Am. Compl., Dkt. 24-1, at 23–24); and (2) consciously disregarded Plaintiff's equal-protection and due-process rights, and rights under the ADA, by failing to establish an independent Commission to investigate Plaintiff's claims against the officers (*id.* at 24–25). (*See also id.* at 14 ("Plaintiff advance[s] two theories of municipal liability. First asserts that the City has a custom of zealously promoting debating science in mishandling investigations failed to train employees[.]")

However, Plaintiff offers only conclusory statements in support of his claims that the City failed to train and supervise its employees or created a policy or custom that resulted in the deprivation of Plaintiff's rights. (*See, e.g.*, Am. Compl., Dkt. 24-1, at 23–24.) Plaintiff argues, for example, that the City "knew of the moral certain[t]y that private and government superiors and their subordinates would acquire legally blind individuals (clients)," and that the failure to train subordinates pursuant to the ADA "will virtually always lead to a substantial violation[], in Due process [and] Equal protection[.]" (*Id.* at 12.) Plaintiff also argues that the City failed to properly train its agencies, presumably the CCRB and the IAB, "in handling police misconduct allegations

and records," thereby insulating the seven arresting officers and violating Plaintiff's Fourth and Fourteenth Amendment rights. (*Id.* at 13.) Such "boilerplate assertion[s]" are insufficient to state a *Monell* claim. *See Dumel v. Westchester County*, No. 19-CV-2161 (KMK), 2021 WL 738365, at *6 (S.D.N.Y. Feb. 25, 2021) (collecting cases); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 540 (S.D.N.Y. 2012) (same). Nor does the decision against establishing an independent Commission (*e.g.*, Am. Compl., Dkt. 24-1, at 24–25)—a discretionary choice by the City—arise to a conscious disregard of Plaintiff's rights. *See Doe*, 2018 WL 3824133, at *8.

Therefore, Plaintiff's *Monell* claims against the City are dismissed for failure to state a claim. *See Johnson v. City of New York*, No. 18-CV-4030 (MKB), 2020 WL 249100, at *2 (E.D.N.Y. Jan. 16, 2020) (dismissing a *Monell* claim because the plaintiff failed to allege facts "to support an inference that the City had an official policy or custom that caused a violation of any federally protected right").

## II.    Sections 1985 and 1986

To the extent Plaintiff alleges a conspiracy to deprive him of constitutional rights under Sections 1985 and 1986, those claims are dismissed as to all Defendants.

> To state a civil rights conspiracy under § 1985(3), a plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. A section 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.

*Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir. 2006) (internal quotations and citations omitted); *see also Brito v. Arthur*, 403 F. App'x 620, 621 (2d Cir. 2010) (summary order) ("To state a conspiracy claim under 42 U.S.C. § 1985, Appellant must have alleged: (1) some racial or other class-based discriminatory animus underlying the Appellees' actions; and (2) that the conspiracy

was aimed at interfering with Appellant's protected rights." (citing *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268 (1993))).

With respect to his claims under Sections 1985 and 1986, Plaintiff alleges that Defendants

> held secret meetings of the minds, leading to issuing subpoenas, conducting interrogations, communication through e-mails, coming into contact, and further overt acts in the suppression of exculpatory evidence, unreasonably prolonging investigations, while doctoring records, video, audio recordings, falsifying reports and dissuading arresting officers from telling the truth, fraudulent concealment caused plaintiff to suffer possible discovery deception wrongly deceived.

(Am. Compl., Dkt. 24-1, at 11–12.)

These allegations plainly fail to state a claim under Section 1985(3). First, they are "nothing more than conclusory allegations of a conspiracy between and among Defendants." *See DuBois v. Bedford-Flatbush Chiropractic, P.C.*, 409 F. Supp. 3d 62, 67 (E.D.N.Y. 2019). Second, they do not suggest any agreement to violate constitutional rights based on class-based discriminatory animus. *See Brito*, 403 F. App'x at 621. Accordingly, Plaintiff's Section 1985 claim must be dismissed. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding allegations of conspiracy "baseless" where the plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators"); *Webb v. Goord,* 340 F.3d 105, 110–11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds"); *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999) (per curiam).

Since Plaintiff's Section 1985 conspiracy claim fails, his Section 1986 claim also fails. *See Graham v. Henderson,* 89 F.3d 75, 82 (2d Cir. 1996) ("[A] § 1986 claim is contingent on a valid

§ 1985 claim[.]"); *see also Wang v. Off. of Pro. Med. Conduct*, 228 F. App'x 17, 19 (2d Cir. 2007) (summary order).[15]

Therefore, Plaintiff's Section 1985 and 1986 claims are dismissed for failure to state a claim.

## III.  ADA and Rehabilitation Act

Plaintiff alleges that the City failed "to implement adequate training courses to [BDS] in safeguarding [P]laintiff's [rights] pursuant to[ the] ADA [and] Rehabilitation Act[.]"  (Am. Compl., Dkt. 24-1, at 30.)  He asserts that the City should have "implemented polic[ies, or customs fit in training Court appointed attorneys when faced with representing qualified individuals" (*id*), and that BDS attorney Regis's meeting with Plaintiff without "a qualified interpreter (advocate)" and "any auxiliary aids and devices for [P]laintiff's disability" violated Plaintiff's rights (*id.* at 31).

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a); *see also Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (citing, *inter alia*, 29 U.S.C.

---

[15] 42 U.S.C. § 1986 creates civil liability for failing to prevent actions taken pursuant to a § 1985 conspiracy: "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . ."  42 U.S.C. § 1986.

§ 794(a)).  "In most cases, the standards are the same for actions under both statutes."  *Harris*, 572 F.3d at 73 (internal quotations, alteration, and citation omitted).  The Court thus analyzes Plaintiff's claims with reference only to Title II of the ADA, but the same analysis applies for any claim under the Rehabilitation Act.

To assert a claim under Title II, Plaintiff "must demonstrate that '(1) he is a qualified individual with a disability; (2) [Defendants] [are] subject to [the statute]; and (3) he was denied the opportunity to participate in or benefit from [] [D]efendant[s'] services, programs, or activities, or was otherwise discriminated against by [D]efendant[s] because of his disability."  *Disabled in Action v. Bd. of Elections*, 752 F.3d 189, 196–97 (2d Cir. 2014) (footnote omitted) (quoting *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d. Cir. 2012)).  An ADA "plaintiff may base [his] discrimination claim on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation."  *Davis v. Shah*, 821 F.3d 231, 260 (2d Cir. 2016); *see also Disabled in Action*, 752 F.3d 189, 197 (2d Cir. 2014) (ellipsis omitted) ("To assure meaningful access, 'reasonable accommodations in the [public entity]'s program may have to be made.'"  (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003))).

Under the applicable standards, there are several limitations to Plaintiff's ADA claims. First, Title II claims may proceed against individuals only if they are government officers acting in their official capacity.  *See Harris*, 572 F.3d at 72.  Plaintiff thus cannot bring an ADA claim against BDS attorney Regis, a private individual (who does not qualify as a state actor, as previously discussed).  Plaintiff's ADA claim against BDS attorney Regis is therefore dismissed. *See Green v. City of New York*, 465 F.3d 65, 76 (2d Cir. 2006) (affirming dismissal of ADA claim against a private individual).

Second, "Title II applies only to state and local governments, their instrumentalities, and commuter authorities." *Pierce v. Fordham Univ., Inc.*, 692 F. App'x 644, 646 (2d Cir. 2017) (summary order) (citing 42 U.S.C. §§ 12131, 12132; *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 162–63 (2d Cir. 2013)). The Second Circuit interprets "'instrumentality' . . . as referring to a creature of a state or municipality." *Green*, 465 F.3d at 79. A private entity "performing services pursuant to a contract with a municipality[,] even if it does so according to the municipality's rules and under its direction, is not a creature of any governmental entity." *Id.* As discussed above in the dismissal of § 1983 claims against BDS, public defender organizations are private entities. Thus, Plaintiff's ADA claims against BDS are similarly dismissed. *See Browdy v. Karpe*, 131 F. App'x 751, 753–54 (2d Cir. 2005) (summary order) ("[Plaintiff's] ADA claims also were properly dismissed because he has sued his [public defenders], not [a] public entity[.]").

Third, "it is well[-]settled that monetary damages are [] available under Title II of the ADA [only] where the Plaintiff is able to demonstrate intentional discrimination." *Frank v. Sachem Sch. Dist.*, 84 F. Supp. 3d 172, 186 (E.D.N.Y. 2015) (citing *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)), *aff'd*, 633 F. App'x 14 (2d Cir. 2016) (summary order). To prevail on a claim for intentional discrimination under Title II, "a plaintiff must prove a policymaker's 'deliberate indifference to the rights secured the disabled by those statutes,' in addition to the other elements of a Title II claim." *Gershanow v. City of Rockland*, No. 11-CV-8174 (CS), 2014 WL 1099821, at *4 (S.D.N.Y. Mar. 20, 2014) (quoting *KM ex rel. D.G. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343, 358 (S.D.N.Y. 2005)).

Unless Plaintiff properly pleads the City's intentional discrimination to his rights secured by the ADA and Rehabilitation Act, Plaintiff may claim only injunctive relief. Plaintiff's ADA

and Rehabilitation Act claims against the City are thus dismissed, with leave to replead. If Plaintiff seeks to replead his claims under the ADA and Rehabilitation Act, he should make sure to identify the program, benefit, or activity that he was denied the ability to participate in due to his disability.

## IV. State-Law Claims

To the extent Plaintiff purports to bring state-law claims for intentional infliction of emotional distress ("IIED"), respondeat superior, or negligence (*see* Dkt. 26, at 4), these claims are dismissed with leave to replead.

### A. Intentional Infliction of Emotional Distress

"Under New York Law, [IIED] has four elements: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial possibility of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'" *Saleh v. United States*, No. 12-CV-4598 (KBF), 2013 WL 5439140, at *11 (S.D.N.Y. Sept. 27, 2013) (quoting *Howell v. New York Post Co.,* 81 N.Y.2d 115, 121 (1993)). "Whether the alleged conduct is sufficiently extreme and outrageous is a matter of law for the courts to decide." *Frigerio v. United States*, No. 10-CV-9086 (SAS), 2011 WL 3163330, at *9 (S.D.N.Y. July 22, 2011). The extreme and outrageous requirement is met "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id*. (internal quotations and citations omitted). "[T]he requirements of the rule are rigorous, and difficult to satisfy. Given the 'rigorous' requirements, courts often dismiss claims under the 'extreme and outrageous conduct' prong as a matter of law." *Reid v. Sack*, No. 20-CV-1817 (VM), 2021 WL 100490, at *5 (S.D.N.Y. Jan. 12, 2021) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)).

Plaintiff fails to allege that Defendants engaged in extreme and outrageous conduct with the intent to cause him emotional distress, or that he suffered emotional distress as a result of their

conduct.  To the extent Plaintiff's claim is that some Defendants engaged in extreme and outrageous conduct by "manufacturing" or "doctoring" evidence, that conclusory assertion, as previously discussed, is insufficient.  Plaintiff's IIED claim therefore is dismissed.

### B.    Respondeat Superior

Because Plaintiff has not demonstrated an "entitlement to recover against [any City] employee," his claim against the City under the doctrine of respondeat superior fails.  *See Ferreira v. City of Binghamton*, 975 F.3d 255, 278 (2d Cir. 2020).

### C.    Negligence

Plaintiff asserts that the City "was grossly negligent upon setting in place a contractual agreement between, (the City) and [BDS]."  (Am. Compl., Dkt. 24-1, at 29.)  Under New York law, an essential element of a negligence claim against a municipality is a "a special duty to the injured person, in contrast to a general duty owed to the public."  *Ferreira*, 975 F.3d at 283 (quoting *McLean v. City of New York*, 12 N.Y.3d 194, 199 (2009)), *certified question accepted*, 35 N.Y.3d 1105 (2020).

> New York courts have recognized the existence of such a duty where either "(1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality took positive control of a known and dangerous safety condition."

*Id.* at 281 (quoting *Applewhite v. Accuhealth, Inc.*, 972 N.Y.S.2d 169, 173 (2013)).  Plaintiff has alleged no such duty.  His negligence claim against the City is therefore dismissed with leave to replead.

## V.    Leave to Amend

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file a Second Amended Complaint within sixty (60) days of this Memorandum and Order.  "Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state-law claims when it has

dismissed all claims over which it has original jurisdiction." *Liverpool*, 2019 WL 3745734, at *3 n.2 (internal quotations omitted). Because the Court grants Plaintiff leave to replead his federal claims, Plaintiff is also granted leave to replead his state-law claims.

Plaintiff's leave to amend his pleadings is subject to the following limits: (1) Plaintiff should not assert § 1983 claims against the CCRB, IAB, Corporation Counsel, and BDS because, as discussed above, they are non-suable entities under § 1983; (2) Plaintiff should not assert claims relating to the CCRB or IAB investigations against the arresting officers because, as discussed above, there is no constitutional right to a government investigation; (3) Plaintiff should not assert claims relating to the delayed disclosure of Officers Chow's and Battista's involvement in his arrest because, as discussed above, Plaintiff suffered no prejudice and was able to timely add them as defendants in *Walker v. Raja*; (4) Plaintiff should not re-assert any claim that surveillance videotape was "doctored," or that "manufactured" or "fabricated" evidence was produced or introduced during grand jury proceedings; and (5) Plaintiff should not assert-due process claims relating to his underlying arrest and indictment, as the Court has already determined in *Walker v. Raja* that "the evidence overwhelmingly supports a finding that Plaintiff robbed the store with a firearm," *Walker*, 2020 WL 606788, at *10. *See Hunt v. All. N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998) ("[I]t is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile.").

Plaintiff is advised that the Second Amended Complaint will completely replace the Amended Complaint, must be captioned "Second Amended Complaint," and shall bear the same docket number as this Memorandum and Order. Plaintiff is also advised that he should submit only <u>one</u> filing constituting his Second Amended Complaint, and that such filing need not include reproductions of court opinions to which Plaintiff cites. Plaintiff need not, and should not, file

additional affirmations (*e.g.*, Dkts. 24-2, 26, 27) in connection with the Second Amended Complaint, and should submit only <u>one</u> copy of all further filings in this case. Furthermore, Plaintiff's Second Amended Complaint should reference only exhibits and documents filed in this action and bearing the same docket number as this Memorandum and Order.

Although the Court is obliged to allow Plaintiff to amend his complaint at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted), Plaintiff should proceed in good faith and he must refrain from setting forth conclusory statements (*i.e.*, statements not based on specific factual allegations) in support of his claims and repeating any claims that have been dismissed by this Order.

## CONCLUSION

For the reasons stated above, the Amended Complaint is dismissed in its entirety for failure to state a claim pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B). However, the Court grants Plaintiff's motion to proceed IFP and leave to file a Second Amended Complaint within sixty (60) days, as set forth above. All further proceedings shall be stayed for sixty (60) days or until Plaintiff files a Second Amended Complaint, whichever is earlier. If Plaintiff fails to file a Second Amended Complaint within the time allowed or fails to show good cause why he cannot, the Court shall direct the Clerk of Court to enter judgment and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore IFP status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: May 7, 2021
Brooklyn, New York