UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MICHAEL WALKER,

                    Plaintiff,

              - against -

THE CITY OF NEW YORK,

                   Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-5240 (PKC) (TAM)

PAMELA K. CHEN, United States District Judge:

Before the Court is Defendant City of New York's ("City") motion to dismiss *pro se* Plaintiff Michael Walker's Second Amended Complaint. For the reasons stated here, Defendant's motion is granted and the Second Amended Complaint is dismissed.

## BACKGROUND[1]

The Court assumes the parties' familiarity with the facts and procedural history of the case and recites only the facts relevant to Defendant's present motion to dismiss. The Court also incorporates by reference its May 7, 2021 Memorandum and Order dismissing Plaintiff's Amended Complaint. (*See* Memorandum and Order ("M&O"), Dkt. 33.)

On June 4, 2021, Plaintiff filed a Second Amended Complaint against the City as the sole Defendant, asserting claims under the United States Constitution pursuant to Section 1983, Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act, as well as state law. (Second Amended Complaint ("Second Am. Compl."), Dkt. 34.) Plaintiff

---

[1] This case is related to Plaintiff's action in *Walker v. Raja*, No. 17-CV-5202 (PKC) (LB) (E.D.N.Y. Aug. 22, 2017). On August 25, 2022, after a five-day trial, the jury returned a verdict in favor of the defendants in that action and judgment was entered on August 31, 2022. Plaintiff filed an "affirmation in request to appeal" on September 12, 2022.

alleges that the City violated his rights under the ADA and Rehabilitation Act and failed to protect his constitutional rights by (i) failing to train and supervise the Brooklyn Defender Services ("BDS") attorney who represented Plaintiff in his criminal case, (ii) failing to accommodate Plaintiff's visual impairments, and (iii) creating a policy or custom that resulted in the deprivation of Plaintiff's rights.  (*Id.* at 6, 8.)  In particular, Plaintiff alleges that the BDS counsel who represented Plaintiff in his criminal proceeding failed to accommodate Plaintiff's visual impairment when she visited him in prison and during his criminal proceeding.  (*Id.* at 4, 10–11.)

## LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (quoting *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The plausibility standard under Rule 12(b)(6) requires "more than a sheer possibility that a defendant has acted unlawfully," and determining whether a complaint meets this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*  (quoting *Iqbal*, 556 U.S. at 678–79).  For purposes of this analysis, the Court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [is] not required to credit conclusory allegations or legal conclusions couched as factual allegations."  *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90–91 (2d Cir. 2021) (quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020)).  Documents filed by *pro se* plaintiffs are to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## DISCUSSION

The City argues that Plaintiff's Second Amended Complaint must be dismissed for failure to state a claim. The Court agrees.

## I.    Plaintiff's Section 1983 Claims Based on *Monell* Liability

### A.    Legal Standard

42 U.S.C. § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 438 (E.D.N.Y. 2012) (quoting *Baker v. McCollan*, 443 U.S 137, 144 n.3 (1979)). In order to maintain a civil rights action under Section 1983, a plaintiff must allege two essential elements. First, the conduct challenged must have been "committed by a person acting under color of state law[.]" *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Second, the conduct complained of "must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Id.*

A municipality can be liable under Section 1983 if the plaintiff can show that a municipal policy or custom caused the deprivation of his constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). As relevant here, a formally adopted municipal policy, a practice so persistent and widespread that it constitutes a custom or usage, or failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference may give rise to a Section 1983 claim against a municipality. *Doe v. City of New York,* No. 18-CV-670 (ARR) (JO), 2018 WL 3824133, at *8 (E.D.N.Y. Aug. 9, 2018)

(internal quotation marks and citation omitted); *Safran v. Singas*, No. 20-CV-4537 (PKC) (SMG), 2020 WL 7125232, at *4 (E.D.N.Y. Dec. 4, 2020) (citation omitted).

An underlying constitutional violation is "a prerequisite to municipal liability under *Monell*." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

### B.      Plaintiff's Section 1983 Claim Fails

Plaintiff asserts that that the City violated his equal protection, due process, and fair trial rights by (i) failing to train and supervise his BDS counsel regarding the accommodation of visually impaired clients and (ii) creating a policy or custom that resulted in the deprivation of his rights. The Court previously dismissed these claims because Plaintiff's First Amended Complaint failed to assert any underlying constitutional violation and made only conclusory statements in support of these claims. (M&O, Dkt. 33, at 21.) Plaintiff's Second Amended Complaint fares no better.

Plaintiff fails to state any underlying constitutional violation. First, "[t]o prove a violation of the Equal Protection Clause, . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination . . . [and] that the disparity in treatment cannot survive the appropriate level of scrutiny[.]" *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citations omitted). Plaintiff has not alleged any facts from which to infer that Defendant acted intentionally and with discriminatory animus toward Plaintiff. To the contrary, Plaintiff alleges that his BDS counsel and the City failed to consider what

4

accommodations Plaintiff may need in the course of his representation in the criminal proceeding by his BDS counsel.  At best, that is a claim for negligence, not intentional conduct.[2]  Thus, Plaintiff's claim of Fourteenth Amendment equal protection violation fails.

Second, Plaintiff also asserts a due process deliberate indifference claim under the Fourteenth Amendment, which is inapplicable here.  "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the [government officials] acted with deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  Significantly, "the challenged conditions [must be] sufficiently serious to constitute objective deprivations of the right to due process." *Id.*  As the Second Circuit has explained, "to establish an objective deprivation, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Id.* (citation and internal quotation marks omitted).  For example, "prisoners may not be deprived of their basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—and they may not be exposed to conditions that pose an unreasonable risk of serious damage to [their] future health." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (citation and internal quotation marks omitted).  Plaintiff has not pleaded any facts that could support a deliberate indifference claim. Plaintiff's only allegation is that his BDS counsel did not provide accommodations to allow him to watch a video recording pertinent to his criminal case.  Such a denial of accommodations, even if true, does not constitute deliberate indifference to unreasonable risk of harm to Plaintiff's health.

 Third, construed liberally, the Second Amended Complaint also asserts a claim for denial of meaningful access to the courts, based on BDS counsel's alleged failure to provide

___

[2] Indeed, though by no means dispositive given Plaintiff's *pro se* status, the Second Amended Complaint consistently characterizes the City's conduct as "negligent." (*See*, *e.g.*, Second Am. Cmpl. at 3, 5, 6, 10, 11, 14, 19.)

accommodations.  The Second Circuit has held "that the appointment of counsel can be a valid means of fully satisfying a state's constitutional obligation to provide prisoners, including pretrial detainees, with access to the courts in conformity with the requirements of the Due Process Clauses of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment." *Bourden v. Loughren*, 386 F.3d 88, 94 (2d Cir. 2004). Plaintiff's access-to-the-courts claim thus fails because Plaintiff was appointed BDS counsel during his criminal proceeding.[3]

Fourth, construed liberally, Plaintiff alleges a Sixth Amendment fair trial violation claim. Criminal defendants are entitled to "a meaningful opportunity to present a complete defense." *Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). "In practical terms, this means that a criminal defendant must possess sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; otherwise, the proceeding would be merely an invective against an insensible object." *United States v. Crandall*, 748 F.3d 476, 481 (2d Cir. 2014) (citation and internal quotation marks

---

[3] The *effectiveness* of Plaintiff's appointed counsel is a separate issue. *Bourden* 386 F.3d at 98 ("Because attorneys, by definition, are trained and qualified in legal matters, when a prisoner with appointed counsel claims that he was hindered by prison officials in his efforts to defend himself or pursue other relevant legal claims, he must show that, on the facts of his case, the provision of counsel did not furnish him with the capability of bringing his challenges before the courts, not that he was denied effective representation in the court."). Although all of Plaintiff's claims essentially boil down to an ineffective assistance of counsel claim, such claims are not before the Court in this case. *Burris v. Chen*, 15-CV-1207 (PKC) (AYS), 2021 WL 2661129, at *7 (E.D.N.Y. Jun. 29, 2021) ("An ineffectiveness cause of action would be inappropriate in a proceeding brought under § 1983 because an attorney does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." (citation and internal quotations marks omitted)). In any event, the Court takes judicial notice of the Southern District of New York's finding, in a separate case brought by Plaintiff arising out of the same underlying criminal proceeding, that Plaintiff in fact "received the effective assistance of counsel during his criminal proceedings for purposes of the Sixth Amendment and the New York Constitution." *Walker v. City of New York*, 367 F.Supp.3d 39, 60–61 (S.D.N.Y. 2019).

omitted).  Accordingly, "the Sixth Amendment right to participate in one's own trial encompasses the right to reasonable accommodations for impairments to that participation," but such accommodations must be "requested by the defendant before or during trial, or the need for which is, or should reasonably be, clear or obvious to the [trial] judge."  *Id.*  Here, Plaintiff alleges that his BDS counsel failed to accommodate his disability by not arranging for him to watch a video recording in his case.  Unlike in *Crandall*, Plaintiff is not arguing that the trial court failed to provide him with adequate assistance for his vision impairment; Plaintiff instead argues, in essence, that he suffered from ineffective assistance of counsel.  While criminal defense counsel, like the trial court, has a duty to provide reasonable accommodations, *see Pierotti v. Harris*, 350 F. Supp. 3d 187, 196 (E.D.N.Y. 2018), ineffective assistance of counsel claims are not appropriate in Section 1983 actions, *Burris*, 2021 WL 2661129, at *7.

Moreover, even if Plaintiff's counsel failed to provide reasonable accommodations in violation of Plaintiff's constitutional rights, the City cannot be held liable for it under the circumstances of this case.  Plaintiff argues that the City, having entered into a contract with BDS for appointment of counsel in indigent cases, failed to train and supervise his counsel when it did not train her on providing reasonable accommodations to clients with disabilities and thus created a policy or custom that resulted in the deprivation of his rights.  (Second Am. Compl., Dkt. 34, at 5–6, 8, 13.)  It is well established, however, that public defenders do "not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."  *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981).  In other words, public defenders are not state actors, *Georgia v. McCollum*, 505 U.S. 42, 53 n.9 (1992), and their actions therefore cannot be "the moving force of the constitutional violation [that can] establish the liability of a government body under § 1983," *Polk Cnty*, 454 U.S. at 326 (citation and internal quotation marks

omitted).[4]  This is true even if "the state pays for the services [public defenders] provide."  *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015).  Because Plaintiff's BDS counsel was not acting under the supervision of the City, Plaintiff cannot bring a Section 1983 claim against the City for failure to train or supervise his counsel, nor does this alleged failure demonstrate a municipal policy or custom that resulted in the deprivation of his rights.  *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007) ("Plaintiffs must prove in the end that the state defendants' inadequate supervision actually caused or was the moving force behind the alleged violations."); *Polk Cnty*, 454 U.S. at 322 ("At least in the absence of pleading and proof to the contrary, we therefore cannot assume that Polk County, having employed public defenders to satisfy the State's obligations under *Gideon v. Wainwright*, has attempted to control their action in a manner inconsistent with the principles on which *Gideon* rests.").

Thus, Plaintiff's Section 1983 claims against the City are dismissed for failure to state a claim.[5]

## II.    Plaintiff's ADA and Rehabilitation Act Claims

### A.    Legal Standard

Alleged violations of Title II of the ADA and Section 504 of the Rehabilitation Act are generally analyzed under the same standards.  *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009).  The

---

[4] There are a few exceptions to this rule that are not applicable here, *e.g.*, when a public defender "mak[es] hiring and firing decisions on behalf of the State" or "perform[s] certain administrative and possibly investigative functions," *Polk Cnty*, 454 U.S. at 325, and where there is a "systemic breakdown in the public defender system," *Vermont v. Brillon*, 556 U.S. 81, 94 (2009).

[5] Moreover, the Court finds that the Second Amended Complaint only offers "boilerplate assertion[s]" that are insufficient to state a *Monell* claim.  (M&O, Dkt. 33, at 21–22.); *Johnson v. City of New York*, No. 18-CV-4030 (MKB), 2020 WL 249100, at *2 (E.D.N.Y. Jan. 16, 2020) (dismissing a *Monell* claim because the plaintiff failed to allege facts "to support an inference that the City had an official policy or custom that caused a violation of any federally protected right").

Court thus analyzes Plaintiff's claims with reference only to the ADA, but the same analysis applies for Plaintiff's claim under the Rehabilitation Act. To state a claim under the ADA, Plaintiff must demonstrate that "(1) he is a qualified individual with a disability; (2) [the City] is subject to [the statute]; and (3) he was denied the opportunity to participate in or benefit from the [City's] services, programs, or activities, or was otherwise discriminated against by [the City] because of his disability." *Disabled in Action v. Bd. of Elections*, 752 F.3d 189, 196–97 (2d Cir. 2014) (citation omitted). An ADA plaintiff "may base [his] discrimination claim on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation." *Davis v. Shah*, 821 F.3d 231, 260 (2d Cir. 2016); *see also Disabled in Action*, 752 F.3d 189, 197 (2d Cir. 2014) (ellipsis omitted) ("To assure meaningful access, 'reasonable accommodations in the [public entity]'s program may have to be made.'" (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003))). "Title II applies only to state and local governments, their instrumentalities, and commuter authorities." *Pierce v. Fordham Univ., Inc.*, 692 F. App'x 644, 646 (2d Cir. 2017) (summary order). Private parties—like public defenders—cannot be sued under the ADA. *See Harris*, 572 F.3d at 72.

"[I]t is well[-]settled that monetary damages are [] available under Title II of the ADA [only] where the Plaintiff is able to demonstrate intentional discrimination." *Frank v. Sachem Sch. Dist.*, 84 F. Supp. 3d 172, 186 (E.D.N.Y. 2015) (collecting cases), *aff'd*, 633 F. App'x 14 (2d Cir. 2016) (summary order). To prevail on a claim for intentional discrimination under Title II, "a plaintiff must prove a policymaker's deliberate indifference to the rights secured the disabled by those statutes, in addition to the other elements of a Title II claim." *Gershanow v. City of Rockland*, No. 11-CV-8174 (CS), 2014 WL 1099821, at *4 (S.D.N.Y. Mar. 20, 2014) (citation and internal quotation marks omitted).

### B.     Plaintiff's ADA and Rehabilitation Act Claims Fail

Even though Plaintiff names the City as the sole defendant, Plaintiff's allegations only concern the actions of his BDS counsel, not the City.   As already discussed, Plaintiff cannot hold the City liable for his BDS counsel's actions here.  *See Browdy v. Karpe*, 131 F. App'x 751, 753–54 (2d Cir. 2005) (summary order) ("[Plaintiff's] ADA claims also were properly dismissed because he has sued his [public defenders], not [a] public entity[.]").  Moreover, there is nothing in the Second Amended Complaint from which to infer intentional discrimination as to Plaintiff's rights under the ADA or the Rehabilitation Act.  Plaintiff uses the term "deliberate indifference" twice in the Second Amended Complaint.  (*See* Second Am. Compl., Dkt. 34, at 11 ("Upon having constructive knowledge that BDS would more than likely be faced with representing legally blind qualified individuals as clients when allocated federal funding from congress resulted in deliberate indifference" (cleaned up)); *id.* at 12 ("Continuing acts of deprivation of federally protected rights resulted in . . . deliberate indifference to the needs of legally blind prisoners in violation of the due process Clause.").)  However, simply asserting deliberate indifference in a conclusory manner is not enough to assert intentional discrimination.  *See Feaster v. City of New York*, 2021 WL 4597766, at * (2d Cir. Oct. 7, 2021) (summary order) (plaintiff's "failure-to-train and failure-to-supervise claims against the City . . . fail because he makes solely conclusory allegations about the City's alleged deliberate indifference and fails to allege facts to support such claims."); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a claim].").  Because Plaintiff does not seek

injunctive relief, his ADA and Rehabilitation Act claims fail even if the City could be held liable for his BDS counsel's actions.[6]

Accordingly, Plaintiff's ADA and Rehabilitation Act claims are dismissed for failure to state a claim.

## III.    Plaintiff's State Law Claims

"[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." *Schaefer v. Town Victor*, 457 F.3d 188, 210 (2d Cir. 2006).  "Generally, 'if federal claims are dismissed before trial . . . the state claims should be dismissed as well.'"  *Butterfield v. Wade Tours, Inc.*, No. 10-CV-379 (LEK) (RFT), 2011 WL 4442939, at *1 (N.D.N.Y. Sept. 22, 2011) (ellipsis in original) (quoting *Castellano v. Bd. of Trs. of Police Officers' Variable Supplements Fund*, 937 F.2d 752, 758 (2d Cir. 1991)).  Having dismissed Plaintiff's Section 1983, ADA, and Rehabilitation Act claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and dismisses them without prejudice to bring in state court.

## CONCLUSION

For the reasons stated in this Memorandum and Order, Plaintiff's Section 1983, ADA, and Rehabilitation Act claims are dismissed with prejudice for failure to state a claim.  The Court declines to exercise jurisdiction over Plaintiff's state law claims, which are dismissed without

---

[6] In their papers, both parties focus on whether Plaintiff requested reasonable accommodations from his BDS counsel prior to and after her visit to Plaintiff in prison.  Plaintiff bears the burden of requesting an accommodation prior to bringing an ADA claim for its denial. *See Walker*, 367 F. Supp. 3d at 51 ("[I]n this Circuit, a plaintiff generally bears the burden of requesting an accommodation prior to bringing an ADA claim for its denial.").  Whether Plaintiff made the request to his BDS counsel is, however, immaterial here because his BDS counsel is a private party.  Thus, even if Plaintiff did request accommodations from his counsel, there is no reason to believe that the request was made known to and denied or ignored by the City.

prejudice to bring in state court.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is respectfully directed to issue judgment accordingly and close this case.

SO ORDERED.

/s/ *Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  September 28, 2022
          Brooklyn, New York

12